**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MICHAEL LEMP                              )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )          Civil Action No. 24-575
                                         )          Judge Nora Barry Fischer
LELAND DUDEK,                            )
Commissioner of Social Security,         )
                                         )
                    Defendant.           )

## <u>MEMORANDUM OPINION</u>

## I.        INTRODUCTION

Michael Lemp ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking

review of the final determination of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying his May 16, 2023 application for disability insurance benefits ("DIB")

under Title II of the Social Security Act, 42 U.S.C. §§ 401-403 (the "Act"). This matter comes

before the Court on cross motions for summary judgment. (Docket Nos. 6 (Plaintiff) and 9

(Defendant)).

As more fully set forth in Section V below, prior to taking the unusual step of dismissing

this claim at step two – a preliminary step which serves as a "screening device" intended to

"dispose of groundless claims" - the Administrative Law Judge (the "ALJ") was required to find

on substantial evidence that Plaintiff's "medically determinable impairments" did not meet that

step 2 gatekeeping criteria - *i.e.*, that Plaintiff failed to meet his "[un-]exacting" burden to

evidence a "more than minimal limitation on his ability to work." *Magwood v. Comm'r of Soc.*

*Sec.*, 417 F. App'x 130, 132 (3d Cir. 2008); *McCrea v. Comm'r of Soc. Sec.*, 370 F. 3d 357, 360 (3d Cir. 2004) (citing S.S.R. 85-28, 1985 WL 56856 at *3).  And in making this determination, the ALJ was required to construe reasonable doubts/ambiguities regarding the sufficiency of claimant's evidence in the light most favorable to him.  *McCrea, supra,* (holding that "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant" and this step should be "rarely utilized" to deny benefits); *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003)).[1]  On deferential review, the Court is compelled to find that the record simply does not reasonably support a step 2 denial of this claim as groundless under the above standard.

Rather, here, the ALJ was presented evidence of Plaintiff's history of mental health treatment through the Veterans Administration (the "VA"), including a six-day hospitalization shortly prior to his alleged August 1, 2018 disability onset date, followed by three months in a VA residential program, and another hospitalization – this one for 11 days – in June, 2019, shortly prior to his "date last insured" ("DLI") of June 30, 2019.  Plaintiff's VA records also include the notes and opinion(s) of his VA treating psychologists, including those of Dr. Kisslinger (August-October 2018 Domiciliary program); Dr. Graham (June 13-24, 2019 admission); and Dr. Bulgarelli (2020 to 2023).  On the basis of the 10-year-long VA records before him, Plaintiff's last treating psychologist of record, Dr. Bulgarelli,(a)  identified Plaintiff's

---

[1] *See also* S.S.R. 85-28 ("Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to clearly determine the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with [step 2].").  *Cf.* Docket No. 7 at 4 ("SSA policy describes a step 2 denial as an option that is only available in the presence of unambiguous evidence [of a no more than *de minimis* effect on] ability to work.").

The Court notes that the aforesaid clarifications of the intent of and special considerations at step 2 are recognized in neither the Hearing Decision rendered on Plaintiff's claim nor Defendant's Brief in Support of its Motion for Summary Judgment. (Docket No. 4-2 at 11-23; Docket No. 10).

"primary conditions and symptoms" (for the length of Plaintiff's treatment at the VA) as "recurrent and chronic major depression disorder with anxious distress[2] – moderate to severe" which "markedly impairs his ability to function", and (b) documented the continuation of those conditions for more than three (3) years following Plaintiff's June 30, 2019 DLI.   As discussed in Section V, *infra*, Dr. Bulgarelli, who identified multiple specific continuous/chronic mental health impairments to Plaintiff's ability to work, was largely disregarded by the ALJ because he concededly treated Plaintiff only after 2019 and she found his views inconsistent with "the full longitudinal record".   The ALJ also largely dismissed Plaintiff's hearing testimony regarding his worsening mental health disabilities from 2014 (and prior) through 2019 as lacking objective record support; and while credibility determinations are within the ALJ's province,[3] Plaintiff's testimony of daily living, social interactions and mental/emotional health status is not entirely without other support.

Under the "*de minimis"* standard applicable at stage two, and the resolution of any doubt to be made in Plaintiff's favor, the Court finds that the ALJ erred in dismissing this claim without further evaluation.  *See* discussion at Section V(A), *infra; McCrea*, 370 F. 3d at 360; *Newell*, 347 F.3d at 547.  *See also Fisher v. Comm'r of Soc. Sec*., Civil Action No. 19-672-ANB, 2020 U.S. Dist. LEXIS 149999, at *8 (W.D. Pa. Aug. 19, 2020) (finding where record contains some evidence that claimant had significant limitations of ability to do basic work activities, analysis of weighing and evaluation of that evidence is not appropriate at the "clearinghouse" level of step 2, but rather

---

[2] In support, Dr. Bulgarelli further endorsed the "medical documentation" of  "panic attacks" and "disproportionate fear or anxiety about at least two different situations", such as being outside one's home.  (Docket No. 4-10 at 8-9).

[3] *See, e.g., Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).

"at the later steps of the sequential process") (citing *Magwood v. Comm'r of Soc. Sec.*, 417 Fed. Appx. 130, 132-33 (3d Cir. 2008)).

Plaintiff's Motion for Summary Judgment [6] is accordingly granted in the form of reversal and remand of the final determination of the Commissioner, while Defendant's Motion for Summary Judgment [9] is denied.[4]

## II.    PROCEDURAL HISTORY

Plaintiff applied for DIB on May 16, 2023.  Plaintiff's alleged disability onset date was initially June 30, 2013, but was later amended (on November 9, 2023, prior to his hearing) to August 1, 2018,[5] and his DLI was June 30, 2019.  The Social Security Administration (the "SSA") denied his application initially (June 21, 2023) and upon reconsideration (July 17, 2023). After the SSA informed Plaintiff that he did not qualify for benefits,  Plaintiff requested, appeared and testified at an approximately 45 minute long telephonic hearing held on November 16, 2023, before the designated ALJ, Joanna Papazekos.  Plaintiff was represented at said hearing by his then-counsel, Melanie Davis.  Louis Szollosy, an impartial vocational expert, also appeared at the hearing and testified briefly.

On January 19, 2024, the ALJ issued a hearing decision finding that Plaintiff had not been under a disability from the alleged onset date through Plaintiff's June 30, 2019 DLI (the "ALJ Decision"). Specifically, at step two, the ALJ conducted a two-part analysis pursuant to 20 CFR Pt. 404, Subpt. P, App. 1, in which she first found that, through his DLI, Plaintiff had "medically

---

[4] This Court may, under 42 U.S.C. § 405(g) and the Third Circuit's *Podedworny* opinion, affirm, modify, or reverse the Commissioner's decision, with or without a remand for a rehearing *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir.1984); *Bordes v. Commissioner*, 235 F. App'x 853, 865–66 (3d Cir.2007). Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny*, 745 F.2d at 221–22.

[5] Docket No. 4-6 at 166.

determinable impairments"[6] of panic disorder, anxiety, depression with psychotic features, schizophrenia, and a history of polysubstance/alcohol abuse disorder.[7]  She next found, however, that these impairments, neither individually nor in combination, were "severe impairments" (*i.e.,* ones causing "more than minimal limitations" to his ability to work under SSR 85-28), and so denied his claim. (Docket No. 4-2 at 11-23).[8]  Because ALJ Papazekos determined that Plaintiff was not disabled at step two of the five step process set forth at 20 CFR § 404.1520, she made no further evaluation.[9]

Plaintiff requested review of the decision, and on March 6, 2024 the Appeals Council denied review, making the ALJ Decision the final decision of the Commissioner.[10]  Plaintiff then

---

[6] A "medically determinable impairment" is an impairment whose existence is established by "medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques . . . ." § 404.1529(b).

[7]  While these mental impairments are the focus of Plaintiff's assignment of error, the ALJ found several other medically determinable, but non-severe, impairments: fatty liver, hypertension, hyperlipidemia, sleep apnea, obesity, degenerative joint disease, and chronic low back pain.  (Docket No. 4-2 at 17; Docket No. 6 at 2).

[8] The ALJ found that that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act, correctly defining disability as "the inability to engage in any substantial gainful activity by reason of any *medically determinable physical or mental impairment or combination of impairments* that can be expected to result in death or *that has lasted or can be expected to last for a continuous period of not less than 12 months*." *See infra,* Section IV. She further noted that Plaintiff was required to "establish disability on or before [his DLI] in order to be entitled to a period of disability and disability insurance benefits."  (Docket No. 4-2 at 15-16).

[9] That is, the ALJ did not make any of the remaining required findings in the sequential evaluation: she did not make any determination with respect to Plaintiff's medical conditions (singly or in combination) meeting or equaling the requirements of a listed impairment (step 3) or findings regarding his residual functional capacity ("RFC"), and thus conducted no analysis of whether he is able to perform his past or other jobs in spite of his impairments (steps 4 and 5).

[10] The facts set forth as to the administrative procedural history are taken from the Certified Copy of the "Documents Related to Administrative Process" before the SSA.  (*See generally* Docket No. 4-1 to 4-10).  A full summation of that history being competently provided by the parties, the Court need not further repeat it here.

As Plaintiff duly notes that, because the ALJ Decision postdates Plaintiff's DLI, its findings are *res judicata* and bar further applications for DIB absent reversal and a favorable reconsideration by the SSA, *i.e.*, an error due to an unreasonably short-shrift assessment has heightened finality and, with it, heightened potential for unjustness as to Plaintiff's claim. (Docket No. 7 at 2, n.6).

having properly exhausted his administrative remedies, he timely sought judicial review pursuant to 42 U.S.C. § 405(g).  The Complaint was filed in this Court on April 16, 2024.  (Docket No. 1).

On July 2, 2024, Plaintiff filed a Motion for Summary Judgment and a well-written Brief in Support prepared by his present counsel, Lindsey Sbrolla.  (Docket Nos. 6 and 7).  Defendant then filed a Motion for Summary Judgment and a Brief in Support one month later (Docket Nos. 9 and 10), followed by Plaintiff's Reply Brief (Docket No. 11).  The matter is ripe for disposition.

## III.    STATEMENT OF FACTS[11]

### A.  Hearing Transcript - General Background; Employment History

Plaintiff testified that he was born in February, 1974, and was thus 49 years old and a "younger person" at the time of the hearing. [12]  He is an Army Veteran with a high school education, divorced, and lives alone in a rental apartment on his service-connected VA disability benefit, without other forms of assistance.  Although he can drive, anxiety and panic attacks restrict his range of travel to within a few blocks of his apartment, usually during nighttime/off hours, and for necessities such as groceries.  Plaintiff has past work experience as a plastics welder, electrician apprentice/helper (but was unable to complete the licensing program), and as a pallet-loader and 18-wheel truck driver for a grocery store.  (Docket No. 4-2 at 32-38).

Plaintiff explained that after a substantial period of military service and employment, he lost his job in 2014 (primarily for excess absence) while going "through a real rough time with divorce and bankruptcy" and began to have panic attacks – which were worse and included vomiting when he had to prepare to go to/be present at work.  He testified that, during the 2014 to

---

[11] The facts presented are those available to the ALJ when rendering her decision.  *See Matthews v. Apfel*, 239 F.3d 589, 592, 594-93 (3d Cir. 2001).

[12] The SSA's regulations define a "younger person" as one who is less than 50 years of age.  20 C.F.R. §§ 404.1563, 416.963.

2019 interval of which the ALJ inquired, he was also disabled by severe insomnia (sleeping approximately three hours per night) that affected his short-term memory and concentration, and was prescribed multiple (and changing) medications for panic attacks, depression, schizophrenia and blood pressure – which partially helped his condition but also increased his lack of energy and cognitive fog.[13]  He acknowledged being unable to maintain personal hygiene or care of his living space (which he referred to as "disgusting") and having episodes of suicidal depression.  And in addition to tinnitus, Plaintiff attested to episodes of auditory hallucination of unintelligible voices.

He spends his days generally watching movies on television, does not participate in social media (which he found agitating), orders delivery food when he can afford it and otherwise makes spaghetti or peanut butter sandwiches, does not go out to church or other activities, or socially at all, and occasionally is visited by his 19-year-old daughter.  He acknowledged a history of marijuana and excessive alcohol (beer) use.  And he testified that prior to 2014 he was able to function and to care for his then-younger daughter; he feels his mental health condition has "definitely progressive[ly worsened]".  (Docket No. 4-2 at 39-51).

In the extraordinarily limited testimony requested of him, the vocational expert testified that employers' customary expectation regarding absence is such that if an employee consistently missed two or more days per month, without improvement, it would definitely be preclusive of employment – as would an inability to keep a schedule (*i.e.*, more than two times monthly late arrival or early departure) or being off-task consistently 15% or more of the workday.  He further noted that the "number could be less . . . because reliability [and performing at an average rate are] crucial."  (Docket No. 4-2 at 50-52).

---

[13] During the hearing, Plaintiff stated that all of his physical and mental health treatment has been through the VA and that he has been assigned more than one different psychologist over time.  He also testified that his fear of leaving the house impeded his ability to seek/obtain in-person treatment and that he had hospital admissions in 2018 and 2019.  (Docket No. 4-2 at 30-31).

**B.  Medical Treatment History**

As noted in Section II,[14] Plaintiff focuses his appeal on the ALJ's step 2 determination that his claim of mental impairments was essentially groundless.  Thus, the Court will limit its discussion of that treatment history as reflected in the records before the ALJ.  *See generally* Docket No. 4-8 to 4-10  (Certified Transcript pp. 208-713) (VA office treatment records and progress records spanning November 2012 to June 2023).[15]

As accurately outlined in his Brief in Support (Docket No. 7), Plaintiff's VA medical records demonstrate continuing treatment (including medication regimens) for panic disorder, anxiety disorder, and depressive disorder for approximately ten years.[16] *See, e.g.*, Docket No. 4-8 at 251 (February 2014, history of anxiety disorder, panic disorder, depressive disorder) *id.* at 233 (December 2014, depression and anxiety; prescribed bupropion, escitalopram oxlate, gabapentin and trazadone);[17] *id.* at 237 (March 2015, severe anxiety attack and hospitalization, prescribed Risperdal for anxiety/agitation/anger, also noted taking prazasin for trauma-related nightmares); Docket No. 4-9 at 332 (10/23/2018 discharge from Domiciliary program with diagnosis of major depressive disorder - moderate/severe, unspecified anxiety and alcohol use disorders); *id.* at 440-445 (June 2018, six day hospitalization – anxiety, panic attacks and depression; treatment included

---

[14] *See supra*, at p. 4 n. 4.

[15] In addition, although it has thoroughly reviewed the record, the Court finds it unnecessary to summarize Plaintiff's treatment record in the detail that might be warranted had the ALJ fully evaluated this claim, rather than dismissing it at step 2.  *Cf.* Docket No. 7 at 5-9 (providing a focused account of Plaintiff's mental health treatment in support of his having sufficiently evidenced a "more than minimal" impairment to his ability to work under the step 2 standard).

[16] Owing to his treatment history, Plaintiff is classified as a REACH VET, *i.e.*, one in the top .1% of veterans at higher risk for adverse events including suicide or life-threatening medical issues.  (Docket No. 7 at 6) (citing Docket No. 4-9 at 706).

[17] Plaintiff testified that in 2014 panic attacks caused him to miss work and, ultimately, he was fired from his job as an electrician.  (Docket No. 4-2 at 38).  Since then, he has been unable to work. *See supra,* Section III(A) (he has continued to have difficulty driving due to anxiety attacks and only drives when absolutely necessary, *e.g.*, to  convenience store a few blocks away); (Docket No. 4-2 at 34-38).

work on reducing panic attacks to 2x weekly, decreasing catastrophic thinking about them, and emotion management).

From June 2018, shortly before the amended onset date of August 1, 2018, through the date last insured of June 30, 2019, Plaintiff was twice hospitalized for psychological symptoms, for periods of first six and then eleven days, and participated in a structured rehabilitative residential program for three months.  (Docket No. 4-9 at 327, 332; c*f.* Docket No. 7 at 6-7).  More particularly:

Following his June 2018 six-day hospitalization, in August 2018, Plaintiff was admitted to the VA Domiciliary program, where he remained through October.[18]  His diagnoses included chronic moderately severe depressive disorder and anxiety.  (Docket No. 4-9 at 322).  Although, as the ALJ notes, Plaintiff was seen only three times over the following winter-spring, he continued to report anxiety (with nausea) impediments to leaving his house and fears of social interaction/crowds.  *Id.* at 573-76; *cf. supra*, n. 13.  During spring 2019 his progress records reflect that he was having nightmares three times a week, sleeping only 3 hours at a time, having strong feelings of guilt and worthlessness, and experiencing significant anxiety (evidenced by cold sweats, shaking, and nausea) when he had to leave his home.  *Id.* at 563-69.  And in June 2019, he was admitted to the hospital - again through the ER to Acute Inpatient care, for depression with suicidal ideation – where he remained hospitalized for 11 days.  *Id.* at 327.[19]  On admission Plaintiff was hallucinating, hearing voices "telling him he was a piece of shit,"  and believed people were watching him.  *Id.* at 444, 541.  Other chronic symptoms of mental impairments included crying

---

[18] The Domiciliary Residential Rehabilitation Treatment Program ("DRRTP") supports at-risk veterans with residential structured rehabilitative, therapeutic community and activities. Participants must engage in rehabilitative services including addiction counseling, spiritual support, behavioral therapy, physical wellness, psychosocial rehabilitation, dietary guidance, vocational training, and occupational therapy. (Docket No. 7 at 7-8.)

[19] His DSM 5 assessment at admission included: major depressive disorder, generalized anxiety disorder,  panic disorder with agoraphobia, alcohol, cannabis, sedative/hypnotic, and tobacco use disorders. *Id.*

9

spells, poor sleep, poor appetite, racing thoughts, anergia, amotivation, hopelessness and helplessness. *Id.*

During this inpatient psychiatric stay, Plaintiff's medical providers had trouble balancing his medications to decrease his anxiety because of severe side effects with increased clonidine, and he was noted to have a flat, blunted affect. *Id.* at 328, 481, 528. While his depression showed improvement, his anxiety was not resolved. *Id.* at 489, 513. On discharge his medication regimen included sertraline (for depression), hydroxyzine (for anxiety), perpheanazine (for schizophrenia), lurasidone (for schizophrenia and bipolar), propranolol (for anxiety), and clonidine (for anxiety). *Id.* at 328, 437-39. When preparing for discharge he had an anxiety attack upon learning that he would have to take a bus downtown to transfer to a bus closer that would take him home. *Id.* at 444.

As noted throughout, Plaintiff's DLI (the date by which he is required to demonstrate a qualifying disability due to a medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of at least twelve months) was June 30, 2019. The records after that date continue, through December, 2023, to document Plaintiff's ongoing mental health issues and their impairment of his ability to obtain treatment. *See e.g.*, Docket No. 4-9 at 364 (August 2022, dysphoria and anxiety along with intrusive panic attacks one to two times a week); *id.* at 259 (November 2022, expressed suicidal ideation but panic attacks prevented him from seeking inpatient care); *id.* at 354 (December 2022, chronic thoughts of suicide and chronic depression with more frequent suicidal thoughts when anxious); *id.* at 338 (June 2023, chronic recurrent depression with anxious distress and panic features, chronic medical disabilities and medical comorbidities such as tinnitus; continued psychotropic medications including

lurasidone, sertraline, gabapentin (for calming as well as pain), propranolol (anxiety and tremor), as needed hydroxyzine and clonazepam (for acute anxiety and panic)).

On November 22, 2023, Dr. Paul Bulgarelli, D.O., who had been treating Plaintiff since 2020,[20] assessed Plaintiff's limitations caused by mental impairments, relating that the opinions he expressed were based on his knowledge of his patient's full medical history and accurately described those mental limitations over the previous 10 years. (Docket No. 4-10 at 718; *see generally id.* at 714-722). Dr. Bulgarelli opined that Plaintiff's depressive disorder is characterized by depressed mood, appetite disturbance, sleep disturbance, feelings of guilt or worthlessness, and thoughts of death or suicide, while his panic attacks are evidenced by persistent concern or worry about additional attacks, and disproportionate fear or anxiety about, *e.g.*, using public transportation or being in a crowd. He further opined that Plaintiff had *marked limitations* in: understanding, remembering, or applying information; concentration, persistence, and pace; and in his activities of daily living; and that Plaintiff is *consistently unable to*: perform within a schedule; maintain regular attendance and be punctual; perform structured activities; sustain an ordinary routine; perform tasks without special supervision; and accept instructions and respond appropriately to criticism from supervisors. Finally, Dr. Bulgarelli opined that, given these mental impairments, Plaintiff would be absent 5 or more days a month, off task 25% or more in a given workday and

---

[20] Dr. Bulgarelli and is affiliated with VA Pittsburgh Healthcare, and specializes in Psychiatry and Family Medicine. (Docket No. 7 at 8 n. 10).

As Defendant duly notes: "In evaluating claims filed on or after March 27, 2017, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." Docket No. 10 at 13 (citing 20 C.F.R. § 404.1520c(a)). Under the post-2017 regulation applicable to this claim, the "most important factors" in evaluating persuasiveness are "supportability" and "consistency", which require the ALJ to examine "objective medical evidence" and "supporting explanations", as well as other "medical and nonmedical sources". Docket No. 10 at 13 (citing 20 C.F.R. § 404.1520c(b)-(c)). *See also Chung v. Commissioner of Soc. Sec.*, No. 24-1974, 2025 WL 1065241 (3d Cir. April 9, 2025).

would require an additional 30-45 minutes of unscheduled breaks in a day.  (Docket No. 4-2 at 714-717).[21]

## IV.    STANDARD OF REVIEW

To be eligible for Social Security benefits under the Act, a claimant must demonstrate to that he cannot engage in "substantial gainful activity" because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).  When reviewing a claim, the ALJ must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability.  20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003).  If the claimant is determined to be unable to resume previous employment, the burden shifts to the SSA/Commissioner at step 5 to prove that, given claimant's mental or physical limitations, age,

---

[21] *Cf.* Docket No. 7 at 8-9, n. 11 ("The only other opinion evidence in the file are those from the Initial and reconsideration DDS examiners who found insufficient evidence to make a determination of disability.") (citing Docket No. 4-2 at 57; 59).

As Plaintiff also correctly notes in his briefing: The ALJ found persuasive the general opinion of the registered nurse practitioner, CRNP Fascetti, who - in noting that Plaintiff had successfully completed Phase I of the VA Domiciliary program - observed that he had "no obvious physical or psychiatric limitation". (Docket No. 7 at 9 & n. 12 (citing Docket No. 2 at 18, Docket No. 4-9 at 627-28)).  *Cf.* Docket No. 10 at 7 (noting that NP Fascetti "treated Plaintiff [by] leading group counseling sessions . . .  and completing physical examinations prior to rending [that] opinion")..

education, and work experience, he is able to perform substantial gainful activity in jobs available in the national economy.  *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

Judicial review of the SSA's final decision on disability claims is provided by statute and is plenary as to all legal issues.  42 U.S.C. §§ 405(g),[22] 1383(c)(3).[23]  *See also Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).  The SSA's factual findings are judicially reviewable to determine whether they are supported by substantial evidence, and the court reviews the record as a whole.  42 U.S.C. § 405(g); 5 U.S.C. §706.  *See also Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002); *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).  "Substantial evidence" is defined as evidence that would satisfy a "reasonable mind" as adequate to support a conclusion. *Id.; Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).  As some courts have put it, including the Supreme Court recently, the ALJ must build an accurate and logical bridge between the evidence and her conclusions:

> An agency action qualifies as "arbitrary" or "capricious" if it is not "reasonable and reasonably explained."  *FCC* v. *Prometheus Radio Project*, 592 U. S. 414, 423, 141 S. Ct. 1150, 209 L. Ed. 2d 287 (2021).  In reviewing an agency's action under that standard, a court may not "'substitute its judgment for that of the Agency.'"  *FCC* v. *Fox Television Stations, Inc.*, 556 U. S. 502, 513, 129 S. Ct. 1800, 173 L. Ed. 2d 738 (2009).  But it must ensure, among other things, that the agency has offered "a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made."  *Motor Vehicle Mfrs. Assn. of United States, Inc.* v. *State Farm Mut. Automobile Ins. Co*., 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed.

---

[22] Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business.

[23] Section 1383(c)(3) provides in pertinent part:

> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

2d 443 (1983) (internal quotation marks omitted). Accordingly, an agency cannot simply ignore "an important aspect of the problem." *Ibid*.

*Ohio v. EPA*, Nos. 23A349, 23A350, 23A351, 23A384, 2024 U.S. LEXIS 2846, at *18 (June 27, 2024); *see also Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014).

If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390. As the Supreme Court reiterated in *Ohio v. EPA, supra, w*hen considering a case, a district court cannot conduct a *de novo* review of the decision nor re-weigh the evidence of record; the court can only judge, under the applicable standard, the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196–97.

## V.    ANALYSIS

On appeal, Plaintiff asserts that the ALJ's step 2 denial – *i.e.*, finding that Plaintiff's impairments (in particular his mental impairments) cause no more than minimal limitation of his ability to work, and therefore terminating her evaluation – was in error. As indicated above, the Court largely concurs with Plaintiff's persuasive analysis and concludes that reversal and remand for fuller consideration is required. More particularly:

### A.    <u>Step 2 Inquiry and Standard</u>

As the Court of Appeals for this and other Circuits have held, and as this court and our sister district courts have accordingly repeatedly observed, an ALJ's analysis at step 2 – which is "in practice . . . to determine whether or not an alleged impairment is 'severe'", *i.e.*, "more than minimal" - is "no more than a '*de minimis'* screening device to dispose of groundless claims." *Niglio v. Comm'r of Soc. Sec.*, 2013 WL 2896875,*8 (W.D. Pa. June 13, 2013) (quoting *Magwood*

14

*v. Comm'r of Soc. Sec.*, 417 F. App'x 130, 132 (3d Cir. 2008) (quoting *Newell*, 347 F. 3d at 46).[24] "Step 2 merely serves a minimal gate-keeping function, and Plaintiff's burden [to demonstrate a more than minimal impairment (singularly or in combination)] is not an exacting one." *Id.* (quoting *McCrea*, 370 F. 3d at 360) (citing S.S.R. 85-28, 1995 WL 56856, at *4 (Jan. 1, 1985) ("Great care should be exercised in applying the not severe impairment concept.")).[25] And "reasonable doubts regarding the evidence are to be construed in the light most favorable to the claimant". *Id.*; *McCrea, supra,* (holding that "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant" and this step should be "rarely utilized" to deny benefits); *Newell, supra.*

Moreover, the Court of Appeals for the Third Circuit has cautioned that the use of Step 2 as a vehicle for the denial of benefits should, "raise a judicial eyebrow," and deserves "close scrutiny." *Id.* (quoting *McCrea*, 370 F. 3d at 360-361) (quoted in *Perez v. Comm'r of Soc. Sec.*, 521 Fed. Appx. 51, 55 n.4 (3d Cir. 2013)). And when, as this Court has previously observed, the record contains some evidence that the claimant had significant limitations of his ability to do basic work activities, including a treating physician's opinion, the analysis of weighing and evaluation of that evidence is not appropriate at the "clearinghouse" level of step 2. Rather, that should be done "at the later steps of the sequential process." *Fisher*, 2020 U.S. Dist. LEXIS 149999, at *8; *Cintron v. Comm'r of Soc. Sec.*, 2017 WL 6800613, *7 (D.N.J. December 2, 2014) (same) (citing *Magwood*

---

[24] At this step, an "impairment is not 'severe' where the record demonstrates only a 'slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's ability to work.'" *Id.* The Court notes that these decisions follow the Fifth Circuit's decision in *Stone* and its progeny. *See Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (holding that an impairment "can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience"); *Anthony v. Sullivan*, 954 F.2d 289, 293 n. 5 (5th Cir. 1992).

[25] *See also, e.g., Kellie F., Plaintiff v. Acting Commissioner, Social Security Administration*, 2025 WL 1155977, at *1 (D. Or. Apr. 21, 2025) (citing *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir .1988) (the step 2 requirement may be employed "as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint").

*v. Comm'r of Soc. Sec.*, 417 F. App'x 130, 132 (3d Cir. 2008) ("[T]he ALJ ignored *McCrea's* instruction by weighing the medical evidence adduced by [the applicant] . . . against the consultative examination of a psychologist and a consultative review of a psychiatrist. This was error.")); *id.* (further noting that "[r]ather, any doubts about the evidence at step two are to be resolved in the applicant's favor") (citing *McCrea*, 370 F.3d at 360; *Newell*, 347 F.3d at 546–47).[26]

When evaluating a mental impairment at step 2, a finding of "non-severe" is only warranted where a claimant's limitations in the four broad functional areas assessed - (1) understanding, remembering or applying information; (2) social functioning/interacting with others; (3) concentration, persistence or maintaining pace; and (4) adapting/managing oneself (vs. episodes of decompensation) - are mild to none. 20 C.F.R., Pt. 404, Subpt. P, App'x 1, Listing 12.00(C)(1)-(4). The degree of functional limitation imposed by the claimant's mental impairment is "based on the extent to which your impairment [singularly or in combination] interferes with your ability to function independently, appropriately, effectively, and on a sustained basis .... consider[ing] such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function." 20 C.F.R. § 404.1520a(c)(1). *See e.g., Pearson v. Colvin*, 2014 WL 4425803, (M.D. La. Sept. 8, 2014).

---

[26] Where the ALJ does not deny benefits at Step 2, but instead proceeds to analyze the claims under the remaining steps, a remand is not generally warranted due to the ALJ's failure to describe an alleged impairment as "severe" at Step 2, unless such error undermines the ALJ's analysis of the remaining steps and/or the ultimate disability determination. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n. 2 (3d Cir. 2007) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)); *see also Niglio*, 2013 WL 2896875, at *8. But as discussed in Section III, a harmless error exception to remand could not apply to the expressly abbreviated ALJ Decision this action, which based denial squarely upon the step 2 criteria.

B.  **The ALJ Decision and Error**

The Decision concludes, at a step 2 analysis, that: "Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work related activities for 12 consecutive months;[27] therefore, the claimant did not have a severe impairment or combination of impairments." (Docket No. 4-2 at 18) (citing 20 CFR 404.1521 et seq.).  More particularly, "[a]fter considering the evidence of record, the [ALJ] finds that the claimant's medically determinable impairments could have reasonably been expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent." *Id.* [28]

The ALJ's first notes in support of this conclusion, that she finds "the September 19, 2018 conclusions of Craig A. Fascetti, CRNP to be persuasive" and that, "[i]n particular, this practitioner opined that the claimant had no obvious physical or psychiatric limitations." (Docket No. 4-2 at 18).[29]  And the Decision goes on to further identify the support of its conclusion thusly:

> As to the claimant's mental conditions, it is noted that the claimant presents with a history of generalized anxiety disorder, panic disorder, and depressive disorder including a psychiatric inpatient hospitalization from June 20, 2018 to June 26, 2018 (Exhibits 1F and 2F).  During the relevant period, from August 1, 2018 to October 23, 2018, the claimant was part of the VA domiciliary program (Exhibit 2F/34-39).  In conjunction with this program, with an August 8, 2018 psychological admission assessments, David Menges, Ph.D., diagnosed the claimant with Major Depressive

---

[27] The Court notes that the Decision expressly addresses only the backward, and not the forward, looking aspect of the criteria (*i.e.*, that Plaintiff had not evidenced that he *had been* significantly limited, or *could reasonably be expected to be* significantly limited, for 12 consecutive months).  *Cf.* Docket No. 10 at 13 ("In sum, the ALJ reasonably determined that Plaintiff's mental impairments were not severe for the required duration of 12 consecutive months . . . .").

[28] *See also, e.g.*,  Docket No. 10 at 11 (Defendant's Brief in Support, noting that the ALJ "acknowledged Plaintiff's testimony regarding social anxiety and difficulties but contrasted this with his attendance and participation in group sessions [lead by CRNP Fascetti during Plaintiff's Domiciliary program residency] at which no significant observations were noted."  *Compare* discussion *infra* at 20 (noting, with imminent reason and citation to SSR 16-3p, that an ability in a highly-structured, supportive setting does not belie disability in another setting

[29] *Compare* Section III, *supra* at 8-9 & n. 19 (concurrent admission and discharge records of psychologist(s) diagnosing/treating Plaintiff's  major depressive disorder - moderate/severe, unspecified anxiety, panic disorder with agoraphobia, and alcohol use disorder).  *Cf. supra* n. 21; Docket No. 10 at 7 ( NP Fascetti "treated Plaintiff [by] leading group counseling sessions . . .  and completing physical examinations prior to rending [that] opinion").

Disorder, Unspecified Anxiety Disorder, and Alcohol Use Disorder (Exhibit 2F/402-406). Along with this, the claimant was hospitalized at the VA from June 13, 2019 to June 24, 2019 (Exhibit 2F/29-33/134-269). However, these conditions fail to demonstrate the presence of greater than minimal functional limitations for a continuous period of 12 months for numerous reasons. Throughout August 1, 2018 to October 23, 2018, [i.e., "throughout his involvement in this [residential structured therapeutic support] program"] the claimant's mental status examinations during therapy/medication management and in group therapy were generally normal and his symptoms were controlled with medication and treatment (see Exhibit 2F/314403). . . . Upon discharge from this program on October 23, 2018, the claimant did not receive additional mental health treatment until January 14, 2019 along with treatment on February 14, 2019 and April 25, 2019. Although reporting some mental health symptoms, the claimant reported improvement with depression during this treatment (Exhibit 2F/270-285).

(*Id.* at 19-20).[30]

The Decision then considered each of the four broad functional categories set forth in the regulations and the Listing of Impairments. *See supra* at 16 (citing 20 CFR, Part 404, Subpart P, Appendix 1). As noted above, these areas, known as the "paragraph B" criteria, include 1) understanding, remembering or applying; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting/managing oneself. The ALJ concluded - based expressly on five records from Plaintiff's August through October residential Domiciliary program participation[31] - that he had *no* limitation in the first and only *mild* limitation in the remaining three categories. (Docket No. 4-2 at 19-20). *Compare* Docket No. 4-10 at 716 (Dr. Bulgarelli's report,

---

[30] *Cf.* Docket No. 10 at 5-6 (Defendant's Brief in Support, noting that in January 2019, Plaintiff "reported increased anxiety, panic episodes, and depression" and "that he was addicted to gabapentin, which had been prescribed for anxiety", and was "disheveled with fair eye contact, dysphoric mood, constricted affect, and poor insight") (citing Docket No. 4-9 at 581-583); *id.* at 6 (in February, Plaintiff "was taking gabapentin, sertraline (Zoloft), perphenazine, hydroxyzine, prazosin, and propranolol" and "indicated that he stayed home due to trouble being around people and had continued anxiety attacks", medication was controlling his anger, he had "occasional thoughts of suicide" and "sometimes heard voices"; "his mood was anxious with some depression and his affect was constricted" and "his dosage of Zoloft was increased") (citing Docket No. 4-9 at 571-74); *id.* (in April, Plaintiff reported "improved depression but ongoing anxiety" and "his mental status examination had improved") (citing Docket No. 4-9 at 570-71).

[31] The Decision's determination of mild limitation in category 4 was also supported by his PHQ scores on three dates during his residency in the Domiciliary program. (Docket No. 4-2 at 19).

assessing "*moderate*" or "*marked*" degrees of limitation in each of these functional categories and, more generally, in restrictions of activities of daily living); *id.* at 716-17 (also noting "expected monthly episodes of deterioration or decompensation in work-like settings" as "three or more"; "marginal adjustment/minimal capacity to adjust to changes in environment or to demands not already part of daily life"; and "difficulty with structured activities" and with accepting instructions and criticism due to mood instability).[32] *Cf.* Docket No. 4-2 at 20 ("In light of this evidence discussed *[in the indented quotation above]*, the [ALJ] does not find the conclusions of Paul Bulgarelli, D.O., to be persuasive or consistent with the full longitudinal record . . . . Moreover, this practitioner conceded that he did not treat the claimant prior to 2020.").

Ultimately, the Decision concluded that "[b]ecause the claimant's medically determinable mental impairments caused no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they were nonsevere." (Docket No. 4-9 at 19-20) (emphasis in original).

Most succinctly - and in addition to the disparities/tensions between the record and the step 2 denial highlighted above - the Court largely concurs with Plaintiff's following three objections to the ALJ Decision:

1. "The ALJ emphasizes [select note dates, primarily while Plaintiff was in a structured residential program) when the exam findings were rather benign, ignoring [the impairment-substantiating import of other evidence, *e.g.*] the multiple in-patient stays and three-month-long

---

[32] The report concludes with the opinion that [Plaintiff] has had these symptoms and limitations for "over 10 years" and that he "has recurrent and chronic major depression disorder which markedly impairs his ability to function, including concentration abilities, interactions with others, and makes him more sensitive to stress of all types". (Docket No. 4-10 at 718).

Domiciliary program stay [itself][33] . . . . It is simply undeniable . . . that [Plaintiff's] mental symptoms have been highly variable. Such evidence is not evidence contrary to, but rather demonstrates practically the *hallmark feature* of, such impairments." (Docket No. 7 at 10-11);[34]

2. Although the Decision "emphasi[zes] that Dr. Bulgarelli did not treat Plaintiff until 2020 as a basis to find his opinion unpersuasive, . . . the Third Circuit has long held that retrospective evidence should not be automatically rejected. To the contrary, such opinions are highly relevant and persuasive unless contradicted by other medical evidence or overwhelmingly compelling nonmedical evidence." *Id.* at 11 *(*citing *Newell*, 347 F.3d at 547; *McDonough v. Astrue*, 2008 U.S. Dist. LEXIS 49974, at *5 (M.D. Pa. June 30, 2008)); and

3. CRNP Fascetti's statement that Plaintiff had "no obvious physical or psychiatric limitations" should be considered in context, *i.e.*, that of "numerous months in a highly structured

---

[33] *Cf. Docket No. 11 at 3 (averring that although the Domiciliary program also provides assistance with homelessness and is not a "traditional inpatient mental health hospitalization", many of its core treatment components are in fact mental health treatment, *e.g.*, therapy and medication management, and should not be discounted in assessing his mental health status). *Cf.* Docket No. 10 at 4 (noting that reasons for Plaintiff's program admission included "maintenance of chronic mental health issues", improvement of healthy self-management; life, interpersonal and communication skills, and that "mental health diagnoses were major depressive disorder, generalized anxiety disorder, and alcohol use disorder"). *Cf, also* Docket No. 4-9 at 332 (treating psychiatrist's discharge summary from Domiciliary program on October 23, 2008 (noting that "at the time of his admission, the Veteran entered into Phase I and with the assistance of VA staff developed a treatment plan that identified the following problems and goals" with first listed "Problem" as "Mental Health (Major Depressive Disorder and Unspecified Anxiety Disorder)").

[34] *Id.* (citing *Parker v. Colvin*, 2016 U.S. Dist. LEXIS 138727, at *3-4 (W.D. Pa. Oct. 6, 2016) (a claimant's medical history is "important in the mental health context, as symptoms wax and wane over time.") (quoting *Epps v. Colvin*, 2014 U.S. Dist. LEXIS 25732 (W.D. Pa. Feb. 28, 2014); *Barker v. Colvin*, 2014 U.S. Dist. LEXIS 122375, at *4 (W.D. Pa. Sept. 3, 2014) (recognizing that there can be a "waxing and waning of mental illness symptoms" and stating that "[j]ust because someone improves at times does not necessarily mean that there are inconsistencies or that [the claimant's] work-related abilities/limitations improved or are adequate.")); *Ehredt v. Comm'r. of Soc. Sec.*, 2014 U.S. Dist. LEXIS 123799, at *2, n.2 (W.D. Pa. Sept. 4, 2014) (Indeed "'[m]any mental illnesses are characterized by 'good days and bad days,' … or recurrent cycles of waxing and waning symptoms.'" "This may mitigate the value of isolated treatment notes, or a 'snapshot,' regarding a claimant's mental condition.") (quoting *Phillips v. Astrue*, 413 Fed. Appx. 878, 886 (7th Cir. 2010). *Cf.* Docket No. 10 at 7 (noting that Plaintiff's designation as a REACH veteran more at risk for adverse events was recurringly added before and removed after his enrollment in that special support program in 2018 and 2019).

*Cf. generally, Burnett v. Commissioner of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (impropriety of highlighting only unfavorable facts while ignoring facts that support a finding of disability); *Rivera v. Astrue*, 9 F.Supp.3d. 495, 505 (E.D. Pa. 2014) (ALJ may not cherry-pick findings).

setting of hospitalization and the wraparound services provided by the VA Domiciliary. Evidence of functioning in such a setting does not establish what a claimant is able to do in the context of a sustained, full-time, competitive work environment." *Id.* at 12 (citing SSR 16-3p (in considering the consistency of the claimant's complaints with the underlying record, the ALJ must consider that "[a]n individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms…"); Program Operations Manual System (POMS) DI 34001.032(D)(1) – *Mental Disorders*).[35]

## VI.    CONCLUSION

In sum, although "disability standards under the Act are stringent" and "[t]he claimant bears the ultimate burden of proving disability within the meaning of the Act",[36] the five-step evaluation procedure to be followed is also clear. And this is simply not the rare case warranting denial of benefits on the truncated review of step 2. *Cf. McCrea*, 370 F.3d at 361. Rather, the evidence here surmounted that fairly-low threshold and, particularly with any doubts to be resolved in Plaintiff's favor, his claim of disabling impairment is patently not "clearly groundless." *Id.* at 360.

As the ALJ concluded, the evidence of record indicates that Plaintiff has been treated and hospitalized for, and diagnosed with the "medically determinable impairments" of,  panic disorder,

---

[35] *See also id.* at 12, n. 13 ("POMS DI 34001.032(D)(1): "General. Psychosocial supports, structured settings, and living arrangements, including assistance from your family or others, may help you by reducing the demands made on you…Therefore, when we evaluate the effects of your mental disorder and rate the limitation of your areas of mental functioning, we will consider the kind and extent of supports you receive, the characteristics of any structured setting in which you spend your time, and the effects of any treatment. This evidence may come from reports about your functioning from you or third parties who are familiar with you, and other third-party statements or information.""").

*Cf.* Docket No. 10 at 11 (averring correctness of Decision's assessment of "non-severe" impairment in the functional area of social interaction, as it "acknowledged Plaintiff's testimony regarding social anxiety and difficulties but contrasted this with his attendance and participation at group therapy sessions, at which no significant observations were noted"). *Cf. generally, supra*, n. 9 (discussing record of Plaintiff's mental health status from his October 2018 discharge from the Doniciliary program until his re-hospitalization for 11 days in June 2019).

[36] Docket No. 10 at 9 (citing 42 U.S.C. § 423(d); 20 C.F.R. § 404.1505(a)).

anxiety, depression with psychotic features, schizophrenia, and a history of polysubstance/alcohol abuse.    His fuller medical history (including the records/notes of other VA treating psychologists/psychiatrists from 2014-2019); the opinion of a VA treating physician both (a) familiar with that 10-year history and (b) identifying "recurrent and chronic" conditions (including major depression disorder) and functional impairments finding support in preceeding treatment and progress notes;[37] and Plaintiff's own hearing testimony provide, at a minimum, additional evidence sufficient to step 2's *de minimis* "screening" standard and requiring further consideration.  *See*, *e.g.* *Cintron.*, 2017 WL 6800613, *6 (remanding as erroneously truncated at step 2 where records indicated claimant suffered from impaired concentration;  had difficulties with focus, sleep, and appetite;  was sometimes paranoid; sometimes had auditory hallucinations; experienced passive suicidal ideation; had mood swings; was socially isolated, without interests or hobbies; and spent most days watching television and sleeping); *id.* (noting that record also indicated physicians increased medication dosages and prescribed additional medication when her symptoms were not alleviated despite treatment).

As Plaintiff's application for DIB "does not fall within the category of 'groundless claims' that step two of the five-step sequential evaluation process was designed to remove from consideration",[38] Plaintiff's Motion for Summary Judgment [6] is granted in the form of reversal and remand with instructions the matter be returned to the Commissioner for further proceedings

---

[37] Docket No. 4-10 at 718.  *Cf.* Docket No. 4-2 at 19 (ALJ Decision noting that "August 8, 2018 psychological admission assessments [of]   David Menges, Ph.D., diagnosed the claimant with Major Depressive Disorder, Unspecified Anxiety Disorder, and Alcohol Use Disorder"); Docket No. 10 at 7 (noting that at time of hospitalization on June 13, 2019, Plaintiff reported that his "medication regime" had "stopped working"; was "diagnosed with major depressive disorder, generalized anxiety disorder, panic disorder with agoraphobia, alcohol use disorder, cannabis use disorder, and sedative/hypnotic use disorder" and "his medications were adjusted, to include adding clonidine for anxiety and starting him on lurasidone for depression") (citing Docket No. 4-9 at 448-49, 539).

[38] *McCrae*, 370 F.3d at 362 (citing *Newell*, 347 F.3d at 546).

consistent with this opinion, and Defendant's Motion for Summary Judgment [9] is denied.  An appropriate Order follows.

                                        _s/ Nora Barry Fischer_
                                        Nora Barry Fischer
                                        Senior United States District Judge

Dated:  May 6, 2025

cc/ecf:  All counsel of record.